THE ATTORNEY GENERAL, EX REL. JAMES A. SCOTT, v. CHARLES GLASER.

[See *ante*, 396.]

*Statutes—Practical construction—Elections—Marking ballots.*

1. The interpretation placed upon a statute by the different departments of the State having a duty to perform thereunder, while not absolutely binding upon the judicial department, is, in a doubtful case, to be given weight; citing *Westbrook v. Miller*, 56 Mich. 151.

2. The election law of 1891 provides:

   *a*—That "any elector may mark or stamp a cross in the space below the party name printed at the head of the ballot. If marked thus, such ballot shall be counted for all the nominees of such party whose names appear on the ballot in that column. If the voter shall have erased some name in the column, or marked a X before the name of a candidate in some other column for the same office, or written in a name under the name of any candidate, the name of such candidate shall not be counted as voted for by such ballot, but, if the name of the candidate shall have been erased, such vote

| 102 | 405 |
| 106 | 290 |

| 102 | 405 |
| 108 | 143 |

| 102 | 405 |
| 115 | 452 |

| 102 | 405 |
| 117 | 126 |

| 102 | 405 |
| 123 | 276 |

| 102 | 405 |
| 124 | 513 |
| 102 | 405 |
| s61NW | 648 |
| 129 | 220 |

| 102 | 405 |
| 135 | s 46 |

shall be counted for the candidate whose name in another column shall have been marked or whose name shall be written under the name erased."

*b*—That "any ballot which shall bear any distinguishing mark or mutilation shall be void, and shall not be counted, and any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates shall be void as to the candidate or candidates thereby affected."

And it is held that ballots marked as follows should be counted:

*a*—Where the name of a candidate appears on two tickets, and a cross is placed in the square opposite his name on each ticket.

*b*—Where the names of the candidates on one ticket appear on another ticket, and a cross appears in the square under the heading of both of said tickets, or under the party name of one ticket and opposite a portion or all of the names on the other.

c—Where a cross appears opposite the names of the candidates on one ticket, or in the square under the party name of such ticket, and the names of the candidates on the opposing tickets are erased, either by horizontal lines or by a cross extending over all of said names.

*d*—Where two tickets are identical, and crosses are placed opposite all the names on each, and a line drawn through each name on the opposing ticket and through one of the names on the duplicate ticket.

*e*—Where a cross appears in the square under the party name of a ticket, and the name of a candidate thereon is erased, and the surname of the candidate for the same office on the opposing ticket is written in.

*f*—Where a cross appears in the square at the head of a ticket, and the name of one of the candidates on said ticket is partially erased, and another name written thereon with a lead pencil.

And it is held that ballots marked as follows should *not* be counted:

*a*—Where more than a single cross appears under the party name of one of the tickets.

*b*—Where a cross appears in the square under the party name of a ticket, and two marks similar to commas appear in the square under the party name of another ticket.

c—Where a cross, with a half circle drawn around it, appears under the party name of a ticket, and a figure 9 appears in the square under the heading of another ticket.

*d*—Where a cross appears in the body of the ticket outside of any square thereon.

*e*—Where a cross appears under the party name on a ticket, and a horizontal line is drawn through the square under the party name of each of the other tickets.

*f*—Where a cross appears under the party name on a ticket, and also opposite the name of a candidate on another ticket, and a line is drawn *under* the name of the candidate for the same office on the first-named ticket.

*g*—Where the ballot has no cross upon it, but a blot appears in the center thereof.

*h*—Where a ballot has no cross upon it, but a straight line is drawn through the square under the party name on one of the tickets.

*i*—Where a cross appears at the right of the square under the party name of one of the tickets, and a large circle is drawn around said square.

Rehearing, upon application of the respondent, of case reported in 102 Mich. 396. Argued November 20, 1894. Former opinion reversed in part January 8, 1895, and judgment of ouster entered. The facts are stated in the several opinions.

*Adolphus A. Ellis*, Attorney General (*Hatch & Cooley* and *T. A. E. & J. C. Weadock*, of counsel), for relator.

*G. H. Francis* (*Pratt, Van Kleeck & Gilbert*, of counsel), for respondent.

MONTGOMERY, J. A rehearing has been had in this case, and, after full consideration, we feel constrained to modify in substantial respects the original opinion. In the former opinion the Court held, in substance, that any mark upon a ballot not appropriate and necessary to express the voter's intention should be regarded as a distinguishing mark; and, applying this rule, it was held that when the name of the candidate appeared on two tickets, and a cross was placed in an appropriate place on each ticket, or opposite the name of the candidate on each ticket, neither vote should be counted. This conclusion was reached with some hesitancy, and in view of the practical difficulty of

applying any other general rule. But it is now earnestly pressed upon our attention that this construction runs counter to the practical construction which has been given by the law department of the State and by the election inspectors, and we feel impressed that sufficient consideration was not given to this fact in reaching the conclusion above stated.

It appears that on the 24th of February, 1892, the Attorney General prepared a letter of instruction to inspectors of election and electors, in which it was stated that where ballots were used on which two tickets appeared with the name of a candidate for a place on each ticket, and a cross was placed in an appropriate place on each ticket, the ballot should be counted for such candidate. Attorney General's Report for 1892, pp. 183, 188–190. The question was again presented in October, 1892, when the Attorney General gave a similar opinion, which is found at page 135 of the report of the Attorney General for 1893. In this opinion it was said:

"The fact that the voter has indicated in more than one way that he desires to vote for any candidate on the ballot is no reason why he should lose his vote or the candidate be deprived of the credit."

It would appear, therefore, that at three different elections the voters have acted with this opinion of the Attorney General before them; and, if we adhere to the construction which we have given to the statute, the result is that many electors must have lost their votes, although they have followed implicitly the instructions of the legal department of the State. This certainly is a result to be deprecated, and one which should only be reached if forced upon us. It is evident that the statute is not entirely clear, as there is no express declaration as to what constitutes distinguishing marks; and the determination of that question depends upon the construction which is to be

placed upon the various provisions of the statute quoted in the former opinion.

It has become a rule of law that the interpretation placed upon a statute by the different departments of the State having a duty to perform under the statute, while not absolutely binding upon the judicial department, is to be given weight in a doubtful case. In *Westbrook v. Miller*, 56 Mich. 151, it was said:-

" When, in the performance of executive duties, it becomes necessary for the executive department to construe a statute, great deference is always due to its judgment, and the obligation is increased by the lapse of considerable time before its acts are called in question,"—citing numerous cases, among which are *Malonny v. Mahar*, 1 Mich. 26; *Britton v. Ferry*, 14 Id. 53; *Continental Improvement Co. v. Phelps*, 47 Id. 299.

See, also, *Baker v. Police Commissioners*, 62 Mich. 327; *People v. Hurst*, 41 Id. 328; *People v. May*, 3 Id. 598; *Johnson v. Ballou*, 28 Id. 379; *Pease v. Peck*, 18 How. 595.

We think, in view of this practical construction, it should be held that the class of ballots above referred to are not illegal. While it may be said that the placing of the cross opposite the name of the candidate on each of the two tickets was unnecessary, neither, by itself, was inappropriate to express the voter's intent, and we feel constrained to hold that the rule which was laid down in our first opinion was too rigid.

There were cast for the respondent certain tickets which had a cross under the party name of the Republican ticket, and also of the Citizens' ticket, both tickets being identical. These we hold should have been counted. In the record they are illustrated by Exhibit 2.

In the same opinion of the Attorney General first quoted, a ticket was presented in which the voter had placed opposite the names of the individual candidates on one ticket a cross, and had erased the names of the candidates on opposing tickets, and the opinion was expressed that

this was a valid vote for the candidates opposite whose names the cross was placed. The same considerations which lead us to hold that the votes first mentioned should be counted induce us to hold that these should likewise be counted. The erasure of the names upon the opposing ticket, while unnecessary, may have been made for the purpose of making more clear the intention of the voter. Tickets of this class are illustrated by Exhibit 15.

This case is presented on demurrer to respondent's rejoinder to relator's replication. There are 40 votes in dispute which were counted for respondent, and 9 votes which were counted for relator which are in dispute. In determining what votes should be counted or rejected, we are to be guided by the rejoinder of respondent, which the demurrer admits to be true, and for convenience we will tabulate them by precincts:

| | To be counted. | To be rejected. |
|---|---|---|
| 1st ward. | 2 tickets: Corresponding to Exhibit 2. | 1 ticket: Exhibit 3. |
| 2d ward, 1st dist. | 2 tickets: 1 Exhibit 2; 1 Exhibit H. | 3 tickets: Exhibits E, F, and G. |
| 2d ward, 2d dist. | 6 tickets: 2 Exhibit 2; Exhibits I, J, K, and 8. | 1 ticket: Exhibit 7. |
| 3d ward. | 1 ticket: Exhibit L. | 2 tickets: Exhibits 9 and N. |
| 4th ward, 1st dist. | 5 tickets: 4 Exhibit 2; 1 Exhibit S. | 4 tickets: 2 Exhibit 12; Exhibits 11 and 13. |
| 4th ward, 2d dist. | 2 tickets: Exhibit 2. | 3 tickets: Exhibits T, U, and V. |
| 5th ward. | 2 tickets: Exhibit 2. | |
| 6th ward. | 3 tickets: Exhibit 15. | 3 tickets: Exhibits 16, 17, and AA. |
| | To be counted, 23. | To be rejected, 17. |

There are a number of these ballots which have under the heading more than a single cross. These crosses were not appropriate to express the voter's intent, and the ballots are excluded.

Exhibit 3 has a cross in the square under the Republican ticket, and two marks similar to commas in the square under the Democratic ticket. These marks could not have been used to express the voter's intent, and the ballot should be excluded.

One ticket (Exhibit 8) has a cross in the appropriate place under the Republican ticket, and on the ward ticket the name of the candidate for alderman is erased, and the word "Hayes," the surname of the candidate on the opposing ticket, written in. This ticket, we think, should be counted, as it is evident that the purpose was to express an intent to vote for Hayes, although the voter failed to write his full name.

Exhibit 17 has a cross under the heading "Republican Ticket," with a half circle round it, and a figure 9 written in the square under the head "Citizens' Ticket." This should not have been counted, as the figure used certainly could not have been appropriate to express any intent of the voter, or so intended.

Of the tickets counted for the relator, Exhibits B, W, and X should have been excluded, on account of multiplicity of crosses.

Exhibit M contained a cross under the head of the "Democratic Ticket," and a cross opposite the name of Charles Glaser, on the Republican ticket, with a line drawn underneath the name of James A. Scott, without erasing the name. This ballot was counted for Scott, but should not have been counted for either, as the voter's intent could not be ascertained.

Exhibit O was counted for the relator. The ticket had

no cross upon it, but a blot in the center of the ticket. This should not have been counted.

Exhibit P had no cross upon it, but a straight line underneath the Democratic ticket. This should not have been counted, as the intent of the voter was not expressed in the manner provided by statute.

Exhibit Z should have been excluded, as it had a cross under the Democratic ticket, outside the square, and the square was inclosed in a large circle, which could not have been used to express the voter's intent.

Of the nine votes counted for relator which are in contest, one (Exhibit C) was, we think, under the averments of respondent's rejoinder, properly counted for him. It is alleged of this ballot that it " was marked with a cross in the square at the head of the Democratic ticket, and one of the names of the ward officers was partially erased, and the name Walter L. Portt written thereon with a lead pencil." This was plainly an attempt to vote for Walter L. Portt for the office designated, and it should not be treated as a distinguishing mark.

It is also apparent from the averments in respondent's rejoinder that one ballot which was counted for respondent (Exhibit N) should have been counted for relator. This ballot was one cast in the Third ward, which is described in respondent's rejoinder as follows:

"The ticket was marked with a cross in the square at the head of the Republican ticket, and the name of Charles Glaser erased, and James A. Scott written in the Republican ticket, which ballot was also counted for respondent."

Deducting from the vote of the relator 8 votes, shown by respondent's rejoinder to have been improperly counted for him, and adding the vote in the Third ward just referred to, which was counted for respondent, and which has been deducted from his vote, shows the relator to

have ·received 1,171 votes. Deducting the 17 votes from respondent's vote, he is shown to have received 1,170. The relator was elected by a majority of 1 vote, and judgment should be entered for him.

LONG and GRANT, JJ., concurred with MONTGOMERY, J.

HOOKER, J. I concur in the opinion of my ·Brother MONTGOMERY, except as to Exhibit L, which I think bears a distinguishing mark, and should have been rejected.

McGRATH, C. J. In this case the official ballot was as found on page 414.

Exhibit H (Second ward, First district) had a cross in the space at the left of each name on both the Republican and ·Citizens' tickets, and a line was drawn horizontally through each name on the Democratic ticket, and also through the name of Alex Zagelmeyer, on the Republican ticket. Exhibit S (Fourth ward, First district) had a cross in the space at the head of the Republican ticket, and a cross in the spaces to the left of the first two names on the Citizens' ticket. I think that both of these tickets should have been rejected. If allowed to use the spaces and the horizontal lines in the manner here made use of, there is no reason why these very lines and spaces may not be used to identify the ballot, and there is no end to the combinations which may be made for that purpose. I think that all marks upon the ballot should be such as to repel any inference that the marks were intended as distinguishing marks.

Exhibit 7 (Second ward, Second district) has a cross in the space at the head of the Republican ticket, and another cross in the same column, at the head of the ward ticket, where no square is provided. Exhibit L (Third ward) has a cross at the head of the Citizens' ticket, and a line is drawn from the upper left-hand corner to the lower right-hand corner of the Democratic ticket, and an-

| NAME OF OFFICE VOTED FOR. | Republican Ticket. ☐ | Democratic Ticket. ☐ | Citizens' Ticket. ☐ |
|---|---|---|---|
| **CITY.** | | | |
| Comptroller | ☐ Charles Glaser. | ☐ James A. Scott. | ☐ Charles Glaser. |
| Treasurer | ☐ Reuben C. Tasker. | ☐ Michael S. Griffin. | ☐ Reuben C. Tasker. |
| Justice of the Peace | ☐ Samuel L. Brigham. | ☐ Charles S. Thomas. | ☐ Samuel L. Brigham. |
| Bridge Commissioner | ☐ Alex Zagelmeyer. | ☐ John Bloomshield. | ☐ Alex Zagelmeyer. |

Ward Ticket.

other line from the upper right-hand corner to the lower left-hand corner, forming a cross over the whole ticket. Exhibit P, instead of a cross in the space at the head of the ticket, has a line drawn horizontally across through the space, and extending three-eighths of an inch beyond the space on either side. In my opinion, these ballots should be treated alike. The intent is none the more manifest in the one case than the other. In Exhibit L the voter put a cross where he should have put lines by making use of the stamp provided therefor. In Exhibit P the voter put a line where he should have placed a cross, evidently making use of the line stamp, instead of the cross stamp. While it is true that in Exhibit L the voter has, in the manner pointed out by the statute, signified his intent by the usual cross placed in the proper place, he has placed upon his ballot marks which are inappropriate, and the only reason that the ballot is counted is that the mark so placed is thought to be indicative of a legitimate intent. Exhibit P, on the other hand, is rejected, simply because the intent to vote the ticket is not expressed in the statutory mode, although the mark is made at the point designated by the statute. These differences of opinion are liable to arise unless the rule is adhered to that whatever marks are placed upon the ballot must be those designated by the statute, and made where the statute indicates that they should be made. I think, therefore, that Exhibit L should have been rejected.

As these changes would not affect the result, I concur in the judgment of ouster.